In the Matter of Raymond Donnis
**WILLIAMSON, Jr., et al.**

**No. 7026.**

Court of Civil Appeals of Texas.

Beaumont.

Feb. 13, 1969.

Rehearing Denied March 6, 1969.

Jerry Zunker, Louis Dugas, Jr., Orange, for appellant.

Moore, Moore & Landrey, Beaumont, for appellee.

STEPHENSON, Justice.

This is an appeal from an order of the trial court granting a default judgment in a dependent and neglected child action.

The record shows: The child welfare worker of Orange County filed a petition to have three minor children declared dependent and neglected. This petition was filed March 20, 1968, and the Court set a hearing for March 28, 1968, at 2:00 P.M. On March 25, 1968, the same child welfare worker filed an amended original petition seeking the same relief, and hearing was set at 2:00 P.M. March 28, 1968. Raymond Donnis Williamson, Sr., the father of one

of the minor children, filed an answer and cross-action on March 26, 1968, asking that he be given custody of his child who had been given to his former wife in their divorce action. On March 29, 1968, a judgment was rendered by the trial court showing it came on to be heard March 28, 1968, and reciting that Raymond Donnis Williamson, Sr., father of Raymond Donnis Williamson, Jr., had filed an answer and cross-action and had appeared in person and by attorney; and, further reciting that Mrs. Drew Sims, the mother of Raymond Donnis Williamson, Jr., although duly served with citation, did not appear. This judgment adjudged this boy to be a dependent child and placed him in the custody of the father, Raymond Donnis Williamson, Sr. A second judgment was filed March 29, 1968, showing the case came on for hearing March 28, 1968, reciting that Mr. and Mrs. Drew Sims were the mother and father of Drew Ben Sims and Anita Gail Sims, and that both Mr. and Mrs. Drew Sims were served with citation and failed to appear, and adjudging all three children to be dependent children, and placing Raymond Donnis Williamson in the custody of his father and the two Sims children became wards of the Court, but were left with their mother. April 8, 1968, pleadings were filed on behalf of Mr. and Mrs. Drew Sims, designated "Defendants' Motion for New Trial and to Set Aside Default Judgment".

This pleading contained the following allegation: That Mrs. Drew Sims was served with a copy of the petition on March 21st, 1968. That her husband took the petition and citation to his attorney in Beaumont, who told Sims he would attend to the matter and that the case would not be heard until Friday morning, March 29, 1968, and that he would notify Sims. Sims had the impression that the attorney would communicate with the court and have the hearing changed from Thursday until Friday, March 29th. That Sims called the child welfare worker about 1:30 P.M. March 28th and was informed that he and his wife were to be present at the hearing that day. That Sims attempted to contact his attorney but had no success. Sims called the child welfare worker that night and was told the results of the hearing, as set forth in the judgment. A portion of the pleading reads as follows:

" * * * The defendants' failure to answer in this case was not intentional and was on account of a mistake on the part of their then attorney and their failure to appear at such hearing was not the result of indifference but was due to the fact that they relied upon the representations of their attorney concerning the date of the hearing.

IV.

"The defendants have a meritorious defense to the dependent and neglected proceeding and also to the cross-action filed by Raymond Donnis Williamson, Sr. Should a new trial be granted the defendants would show that there has not been a material change in the conditions surrounding the care, custody and control of the minor child, Raymond Donnis Williamson, Jr., and, furthermore, that the home in which such children live is a fit home, and that the children are not deprived of parental supervision and control and are not left for long periods of time to fend for themselves, and that the child of school age is attending school. The defendants would show that since January of 1968, Mrs. Drew Sims has enrolled in Lamar State College of Technology pursuing a nursing course, that she enrolled the youngest child in the Pine Forest Baptist Day Care Center, and that the next youngest child, Drew Ben Sims, usually accompanies his father, who is a water well driller and whose hours are more or less left up to him. Defendants would further show that the oldest child was attending class until he became ill and that due to the severe cold weather during the months of January and February of this year his mother thought it to his best advantage

for him to remain home. Mrs. Sims usually gets home each afternoon between 2:00 and 3:30 from class. Mr. Sims is usually home by 1:00 o'clock each afternoon. On several occasions while Raymond Donnis Williamson, Jr. would have the sniffles and a sore throat he remained at home and for several hours would baby-sit for his younger brother and sister. These occasions were unusual and in the judgment of Mr. and Mrs. Sims entirely proper in that Raymond Donnis Williamson, Jr. is an exceptionally responsible youngster for his age and entirely capable of looking after his younger brother and sister for short periods of time. Since Mr. and Mrs. Sims have moved into their new home and enrollment by Mrs. Sims in college, their financial condition is such that although they could afford a baby-sitter they felt that on these few occasions it would be better if they could save this money rather than spend it for baby-sitters. There are neighbors nearby and both Mr. and Mrs. Sims advised the older child where they could be reached in the event of any emergency. Since these isolated instances the health of Raymond Donnis Williamson, Jr. has improved and he has returned to school and Mr. and Mrs. Sims have now employed a responsible lady to stay in their home with the two younger children during their absenses. (sic)

## V.

"The plaintiffs will suffer no injury by the granting of this motion since the defendants are fully willing and, in fact, anxious to proceed to trial on this matter as soon as the calender (sic) of the court will permit and they do not present this motion for the purposes of delay but only so that justice may be done and that they may have their day in court."

The Court set a hearing on this motion and the evidence was heard. Mrs. Sims testified to the following: That she was the mother of the three children whose ages were 12, 4, and seven months. That she was served with the citation in this case at 10:00 A.M., March 21st. That her husband called a Beaumont attorney that night and made an appointment with him for 9:00 O'Clock the next morning. She and her husband carried the papers to the attorney the next morning, who said he would take care of it. The attorney told them he would call the child welfare worker and find out what it was all about, that he would try to have it postponed until the following Friday. that " 'We won't have it until next Friday' ", that "we would get a deferment or whatever you call it" * * * " 'Don't you worry about it, we will get in touch with you * * *.' " That Sims was served with papers Monday or Tuesday evening. They called the attorney who told them to bring the second set of papers to him which they did. That she was not aware the hearing had been held on the 28th until she came home from school (Lamar College) and was told by her husband that the hearing had been held that day. That her failure to appear was not the result of conscious indifference, as she was concerned about the possible consequences. That she did not appear because of the things the attorney had told them. That she had never left her children to fend for themselves, although the little ones had been left with the 12 year old boy when he was home from school. That Raymond (the 12 year old) had remained at home when he was sick. That she had not encouraged him to be a truant. That when he missed he had a good reason. That she had been studying nursing at Lamar College from 9:30 until 3:15, and on alternate days 8:00 until 2:00. That the baby was enrolled in the Pine Forest Baptist Church Nursery. That Sims took the 4 year old with him as he worked as a water well digger. That they lived in a fairly new home which was now fitting. That since the hearing Raymond has been with his father and she still has the other two children in her home. That there is no reason, if the court granted the motion for

new trial, that this case couldn't be heard in its regular order.

Mr. Sims testified to the following: That he is the father of two of the children in this proceeding. That he and his wife went to see the attorney in Beaumont after she had been served with the first papers. This attorney told Sims he would call the child welfare worker to see what everything was about and try to get it straightened out. The attorney told Sims the hearing was next Friday and Sims thought Friday was the 28th. Late Wednesday evening, March 27, the attorney told Sims to get in touch with the child welfare worker. Sims talked with the child welfare worker about 1:00 or 1:30 the next day (Thursday) and she told him the hearing was in thirty minutes and that he'd better get on over there. That he was tied up on the job and couldn't leave, and there was no way to get in touch with his wife. The attorney had told him he would be tied up in court Thursday. Sims made an appointment with the child welfare worker that afternoon. That he was concerned when he was served with the papers and knew what the possible consequences could be. That he had known the attorney about eight years and he had always been trustworthy and reliable in the past. That their home was not dirty and filthy. That the three children were well cared for. That the case could be heard in regular order if the motion for new trial was granted.

The deposition of the attorney was admitted in evidence, and contained the following: That Mr. and Mrs. Sims consulted with him in his office at Beaumont shortly after March 22, 1968, about a dependent and neglected child proceeding. He instructed Mr. Sims to get in touch with the child welfare worker and try to straighten the matter out and he could probably avoid a hearing and save the cost of an attorney. That they (attorney and the Sims) by mistake believed the 28th of March would fall on Friday. That he tried to call the child welfare worker about March 27th and she did not return his call. That he was shown both of the petitions. That he advised the Sims they had a meritorious defense. That the Sims expressed concern, and a desire to contest the dependent and neglected child action. That neither of the Sims expressed indifference. That the Sims did not intentionally make default, and as follows:

"It seems that my efforts to serve these good people the cost of an attorney's fee, which was unnecessary, had some disasterous results. I instructed Mr. Sims to get in touch with me if he did not work things out with Miss Buckner and he did not reach me. Frankly, we also both had miscalculated March 28th to be on a Friday and it appears that the summary hearing was held on Thursday, March 28th. Had I known that the matter had not been straightened out, I would have filed an answer and been present and contested any and all proceedings, whether I was paid or not. I simply advised the people and assumed that the matter was closed."

The Motion for New Trial was overruled by operation of law.

The rule applicable to motions for new trial which seek to set aside default judgments entered on failure of a defendant to file an answer and those entered on failure to appear for trial, is stated in Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939),

"A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff."

The pleadings and the evidence in the present case satisfy all of these requirements. The trial court should have granted the motion for new trial.

Reversed and remanded.